UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Roger Marx Desenberg,<br><br>             Plaintiff,<br><br>     -against-<br><br>Google, Inc.,<br><br>             Defendant. | Case No. 1:08-cv-10121 (GBD) (AJP) |

### DEFENDANT GOOGLE INC.'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Charles K. Verhoeven
charlesverhoeven@quinnemanuel.com
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
  50 California Street
  San Francisco, California 94111
  Tel.: (415) 875-6600
  Fax: (415) 875-6700

Edward J. DeFranco
eddefranco@quinnemanuel.com
Patrick Curran
patrickcurran@quinnemanuel.com
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
  51 Madison Avenue, 22nd Floor
  New York, New York 10010
  Tel.: (212) 849-7000
  Fax: (212) 849-7100

*Attorneys for Defendant Google, Inc.*

Dated: March 20, 2009

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 2

III. ARGUMENT .................................................................................................................. 6

    A. The Complaint Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(1) Because Mr. Desenberg Lacks Standing To Bring This Suit ................................ 6

    B. The Complaint Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(6) Because It Fails To State A Claim For Patent Infringement ................................ 7

        1. Direct Infringement................................................................................... 7

        2. Indirect Infringement .............................................................................. 12

    C. The Complaint Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(7) Because Mr. Desenberg Failed To Join Indispensable Parties ........................... 12

IV. CONCLUSION............................................................................................................. 13

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
   365 U.S. 336 (1961) .................................................................................................. 1

*BMC Resources, Inc. v. Paymentech, L.P.,*
   498 F.3d 1373 (Fed. Cir. 2007) ........................................................................ 6, 7, 11

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955 (2007) ..................................................................... 11

*Cross Medical Prod., Inc., v. Medtronic Sofamor Danek, Inc.,*
   424 F.3d 1293 (Fed. Cir. 2005) ............................................................................... 12

*Emtel, Inc. v. Lipidlabs, Inc.,*
   583 F. Supp. 2d 811 (S.D. Tex. 2008) .................................................................... 12

*Fromson v. Advance Offset Plate, Inc.,*
   720 F.2d 1565 (Fed. Cir. 1983) ................................................................................. 7

*Gaia Tech., Inc. v. Reconversion Tech., Inc.,*
   99 F.3d 774 (Fed. Cir. 1996) ..................................................................................... 7

*Global Patent Holdings, LLC v. Panthers BRHC LLC,*
   586 F. Supp. 2d 1331 (S.D. Fla. 2008) ................................................................... 12

*Imatec, Ltd. v. Apple Computer, Inc.,*
   81 F. Supp. 2d 471 (S.D.N.Y. 2000) ........................................................................ 5

*Keithley v. Homestore.com, Inc.,*
   2008 WL 4962885 (N.D. Cal. Nov. 19, 2008) ....................................................... 12

*Light Impressions, Inc. v. McAulay,*
   1994 WL 564587 (N.D. Cal. Sept. 30, 1994) ........................................................... 6

*Muniauction, Inc. v. Thompson Corp.,*
   532 F.3d 1318 (Fed. Cir. 2008) ........................................................................ 6, 7, 11

*Zenith Elec. Corp. v. Exzec Inc.,*
   876 F. Supp. 175 (N.D. Ill. 1995) ........................................................................... 13

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................passim

Fed. R. Civ. P. 19 ..................................................................................................................... 13

ii

## **Other Authorities**

Wright & Miller, Federal Practice & Procedure § 1614.............................................................. 13

Defendant Google, Inc. ("Google") submits this motion to dismiss the complaint filed November 21, 2008 by *pro se* plaintiff Roger Marx Desenberg ("Mr. Desenberg").

I.      **INTRODUCTION**

Mr. Desenberg's complaint fails to comply with Federal Rule of Civil Procedure 12 in several important respects.

*First*, as set out below, Mr. Desenberg no longer owns the patent at issue. More than one year ago, Mr. Desenberg assigned away all his rights in the patent, including any and all rights to seek damages or injunctive relief based on past, present, or future infringement. Mr. Desenberg therefore lacks standing to bring this suit, and his complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

*Second*, this Action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Mr. Desenberg's complaint fails to state a claim for patent infringement. Even taking the allegations in the Complaint as true, Google does not infringe the asserted patent. The allegations of the complaint demonstrate that at least three parties are required to perform all steps of the claimed method; Google does not, and is not alleged to, perform all steps of the claimed method or meet the Federal Circuit's test for multi-party infringement of a method patent.

*Third*, this Action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) because, to the extent that Mr. Desenberg retains any rights to the patent at issue, he has failed to join indispensable parties in this suit.

For at least these reasons Mr. Desenberg's complaint should be dismissed.

II.     **FACTUAL BACKGROUND**

Mr. Desenberg is the sole named inventor on U.S. Patent No. 7,139,732 ("the '732 Patent"), attached as Exhibit A to the Declaration of Edward DeFranco ("DeFranco Decl."). The patent, entitled "Systems, Methods, and Computer Program Products Facilitating Real-Time Transactions Through the Purchase of Lead Options," issued on November 21, 2006. Mr. Desenberg's complaint details at length the process of prosecuting that patent. *See* Cplt. ¶¶ 4-19. In general terms, the '732 Patent relates to methods that "enable consumers and service providers to locate each other in an efficient manner, with minimal delay, and with minimal cost." '732 Patent 2:31-35. The '732 Patent sets forth an example in which the service providers are carpenters, and the clients are "seeking carpenters with specific skill set availability and similar attributes identified by the clients." *Id.* 6:31-48.

**The patent.** Claim 1 of the '732 Patent is the only independent claim. It claims a method for "facilitat[ing] real-time service transactions between two or more users, including at least one client and at least one service provider." *Id.* 2:46-48. According to the specification, clients for commercial services, and providers of those services, are matched by a "lead option engine" that compares "project profiles" completed by its users and clients. *See id.* 2:48-52 ("Service providers complete project profiles identifying projects they wish to work on, and clients complete project profiles identifying projects they would like to pay service providers to complete."). These "project profiles" include "parameters such as the type of service or project, start date, completion date, skills required for completion, and the like." *Id.* 2:52-54. Clients and service providers "purchase lead options" by paying "a sum of money" to the lead option engine, which then "determines matching clients and service providers based upon the project profiles,

and identifies to one or more lead option submitting users the immediately available users that match the project profile submitted by the user." *Id.* 2:55-62.

Accordingly, the method claimed by the '732 Patent requires participation by at least three parties: (1) a "lead option engine," (2) a "user" or "client", and (3) a "provider" or "service provider". These relationships are depicted in Figure 1 of the patent:



FIG. 1

3

As illustrated in Figure 1, the "lead option engine" is the party that transmits a "lead" (100 in Fig. 1); the client or user is the party that requests the "lead" (110 in Fig. 1); and the service provider is the party whose contact information is provided to the user by the lead option engine (120 in Fig. 1). Claim 1 requires that the service provider actually provide a service for the user, or vice versa, following transmission of the lead. *See* '732 Patent 16:54-56 (requiring that "a service is performed by the user or the provider as a result of the transmission of the lead"). Claim 1 further requires that the service be a paid service. *See id*. 16:57-58 (requiring that "the service includes a service transaction fee"); Cplt. Ex. M ("a lead option engine for volunteers would not be covered," because the "claim only covers paid services, or project work").

**The assignment**. On December 20, 2007, almost one year before filing this suit against Google, Mr. Desenberg assigned all his rights to the '732 Patent to an entity named "RMD IP LLC." *See* DeFranco Decl. Ex. B.[1] Mr. Desenberg assigned RMD IP LLC "all right, title and interest . . . in and to Patent 732" as well as "all right, title and interest [Mr. Desenberg] has in and to all causes of action and enforcement rights . . . for Patent 732, including without limitation, all rights to pursue damages, injunctive relief and other remedies for *past, current and future* infringement." *Id*. at 2-3 (emphasis added). The patent assignment was recorded by the Patent and Trademark Office.[2]

---

[1] Although this patent assignment was not referenced in or attached to Mr. Desenberg's complaint, this Court may consider it on a motion to dismiss. *See, e.g., Imatec, Ltd. v. Apple Computer, Inc.*, 81 F.Supp.2d 471, 480-81 (S.D.N.Y. 2000) (noting court's ability to consider materials outside complaint where standing or other jurisdictional issues are raised; considering patent assignment on motion to dismiss, and dismissing complaint on basis of assignment).

[2] *See* http://assignments.uspto.gov/assignments/q?db=pat&qt=pat&pat=7139732.

**The complaint**. On November 21, 2008, Mr. Desenberg filed a complaint alleging that Google's AdWords system infringes the '732 Patent. The complaint requests payment of $10 billion dollars for past infringement, and additional amounts for future infringement. Cplt. ¶ 22.

Attached to Mr. Desenberg's complaint are claims charts setting out Mr. Desenberg's allegations as to why Google infringes the claimed method. *See* Cplt. Ex. M. Mr. Desenberg's claims chart discussed two "scenarios" accused to infringe the patent: (1) the "Ads Pop" scenario, which refers to any search on Google.com where ads are displayed, and (2) the "Plumber Scenario," which refers to searches for certain services, such as plumbing. *Id*. ("So as you go through this, always use an appropriate scenario, like you are looking for a plumber in New York, that is hired, and paid for services."). These claims charts identify the three parties required by the patent: (1) a "lead option engine," alleged to be Google's AdWords system; (2) "users" or "clients," alleged to be Internet users visiting web pages affiliated with the AdWords system; and (3) "service providers," alleged to be AdWords advertisers – including advertisers for plumbing services – that pay for their advertisements to be served by AdWords. *See* Cplt. Ex. M. (Mr. Desenberg's claims chart) ("The scenarios like the plumber, which infringe on claim 1, are in fact the scenarios where people are paying big money for the leads.").

Mr. Desenberg's complaint also asserts that "To quickly understand exactly what the invention is, and what Patent 732 technology consists of, it is worthwhile to watch an animated 8 minute movie . . . at http://guardloan.com/content/LoeShorter.wmv." Cplt. Ex. A. For the convenience of the Court, a copy of that movie is attached to this motion. *See* DeFranco Decl. Ex. C.

III.  **ARGUMENT**

Mr. Desenberg's complaint does not meet the standards of Federal Rule of Civil Procedure 12. It should be dismissed for lack of standing, for failure to state a claim, and for failure to join indispensable parties.

    A.    **The Complaint Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(1) Because Mr. Desenberg Lacks Standing To Bring This Suit**

As explained above, in December 2007 Mr. Desenberg assigned away all his rights to the '732 Patent, including an express assignment of all past, present, and future rights to enforce the patent. *See* DeFranco Decl. Ex. B. As such, Mr. Desenberg has no rights in the '732 Patent. His suit must be dismissed for lack of standing. *See, e.g., Imatec, Ltd. v. Apple Computer, Inc.*, 81 F.Supp.2d 471, 483 (S.D.N.Y. 2000), *aff'd*, 15 Fed. Appx. 887 (Fed. Cir. 2001) (dismissing patent infringement claim for lack of standing where inventor assigned away his rights to the patent), *Scott Paper Co. v. Moore Business Forms, Inc.*, 594 F.Supp. 1051, 1089 (D. Del. 1984) (inventor who had assigned away all rights to the patent had "no standing to bring a civil suit . . . for infringement of the patents owned entirely by [the assignee]"); *Light Impressions, Inc. v. McAulay*, 1994 WL 564587, at *3 (N.D. Cal. Sept. 30, 1994) ("if a patentee, who has assigned all of its ownership interest in a patent, brings a patent infringement action, the complaint should be dismissed for lack of standing").[3]

---

[3] Because Mr. Desenberg did not have rights in the patent when this suit was filed, the standing defect cannot be cured by a *nunc pro tunc* assignment conferring rights from some pre-filing date. *See Gaia Tech., Inc. v. Reconversion Tech., Inc.*, 99 F.3d 774, 779-80 (Fed. Cir. 1996) (reversing denial of motion to dismiss, and vacating judgment of infringement, where plaintiffs claimed rights to patent based on post-filing assignment made retroactive to a pre-filing date; "[a]llowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue") (quote omitted).

### B. The Complaint Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(6) Because It Fails To State A Claim For Patent Infringement

Mr. Desenberg's complaint accuses Google's AdWords system of both directly and indirectly infringing the '732 Patent. Cplt. ¶¶ 27-28. But even taking all allegations in the complaint as true, Google does not meet the applicable standards for direct or indirect infringement. Because the complaint's allegations fail to state a claim, it should be dismissed.

#### 1. Direct Infringement

Patent claims covering a method can be directly infringed only if "a *single party*" performs "*every step* of a claimed method." *Muniauction, Inc. v. Thompson Corp.*, 532 F.3d 1318, 1328-29 (Fed. Cir. 2008) (emphases added); *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378-79 (Fed. Cir. 2007). Where multiple parties are required to perform all steps of a method, direct infringement is impossible unless the parties act together at the behest of a single party; that is, one party must "control or direct each step of the patented process." *BMC Resources*, 498 F.3d at 1380. "[M]ere 'arms-length cooperation'" causing a method to be performed by multiple parties "will not give rise to direct infringement by any party," because direct infringement occurs "only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, *i.e.*, the '*mastermind*'" of the process. *Muniacution*, 532 F.3d at 1329 (emphasis added). *See also Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565 (Fed. Cir. 1983) (no liability for direct infringement when accused party performed several steps in the method and then sold the product to customers who performed the remaining steps of the method).

As discussed above, claim 1 of the '732 Patent, on which all other claims are dependant, requires three parties: (1) a "lead option engine," (2) at least one "service provider," and (3) at least one "user" or "client" seeking services. Thus, claim 1 discloses a method "comprising

7

transmission of a lead comprising contact information that enables communication between the user and the provider . . . wherein *a service is performed by the user or the provider* as a result of the transmission of the lead and wherein the performance of the service includes a service transaction fee paid *by the user or the provider*." '732 Patent 16:54-58 (emphases added).

Mr. Desenberg's complaint alleges that under certain "scenarios" Google acts as the "lead option engine," providing "leads" that facilitate contact between "users" (*i.e.*, Internet users performing searches) and service "providers" (*i.e.*, advertisers using Google's AdWords and AdSense advertising systems). Specifically, the complaint asserts that "Google's AdWords and AdSense systems infringes . . . under the scenario when a vendor pays for AdWords and obtains a lead, and a service transaction is consummated between the vendor and a customer as a result of the AdWords lead." Cplt. Ex. A.

Thus, "lead option engine" is the only role that Mr. Desenberg alleges Google is alleged to play; the AdWords system is allegedly only one of the three parties performing the steps required by the '732 Patent. Google is not alleged to act as the "user" or "provider," performing services or paying fees for those services. Those acts are performed, if at all, by Internet users and advertisers.

Mr. Desenberg's claims charts illustrate the limited role Google allegedly plays. The charts assert that infringement occurs under a "Plumber Scenario," where "you are looking for a plumber in New York, that is hired, and paid for services." Cplt. Ex. M. Specifically, Mr. Desenberg asserts that:

8

| Claim Limitation | "Does Google's AdWords infringe when Ads Pop up on the right side?" | "Does AdWords Infringe with the Plumber Scenario when someone actually buys the service?" | Explanation |
|---|---|---|---|
| "wherein a service is performed by the user or the provider as a result of the transmission of the lead" | "SOMETIMES" | "ALWAYS" | "This was forced in by the examiner, this is not part of our invention, but in the end, no one would pay for leads if they didn't get business. So we can always prove this occurs by having **witnesses that used the search engine, and hired someone they found**." Cplt. Ex. M (emphasis added).[4] |
| "wherein the performance of the service includes a service transaction fee paid by the user or the provider" | "SOMETIMES" | "ALWAYS" | "Another forced one by the patent examiner. This means a lead option engine for volunteers would not be covered. This isn't fair, but, in the end, should not matter. So our claim only covers paid services, or project work." Cplt. Ex. M. |

Similarly, claims charts allegedly prepared for Mr. Desenberg by Kenyon & Kenyon assert that Google infringes the '732 Patent because "[w]hen a user and provider communicate after finding each other via Google AdWords, an act is often provided *by the provider for the*

---

[4] *See also* Motion for Preliminary Injunction, Ex. A (docket no. 5) (chart entitled "Laymen's 60 Minute Detailed Proof that Defendant's AdWords Systems Infringes [sic] on Patent 7,139,732") (discussion of "Phrase 5 of Claim 1") ("This was the section where the patent examiner said the patent has 'teeth,' because the patented invention includes a real business transaction wherein a service was transacted for a fee. So every time *a service is found and paid for like when a package is shipped that originated as a lead found on Defendant's AdWords systems*, the Defendant infringes. The patent examiner explained to the Inventor that it is very straightforward to show that at least *one service vendor has sold at least one service due to the leads generated by the AdWords systems*.") (emphases added).

*user*," and "[a] provider advertising in Google generally charges a fee paid by the user in consideration for the performed service." *Id*. (emphasis added).  Nowhere in the complaint or in these claims charts is Google itself alleged to act simultaneously as lead option engine, service provider, and user or client.

Accordingly, Mr. Desenberg's complaint does not state a claim for direct infringement. It fails to allege that a single party performs "each step of the patented process." *BMC Resources*, 498 F.3d at 1380.  At best, it alleges that Google combines with its users and with AdWords advertisers (including "plumbers" advertising their services) in an arms-length transaction that allegedly completes all steps of the method: Google allegedly provides "leads," Internet users allegedly act as "clients" requesting "leads," and AdWords advertisers allegedly act as "service providers" that are in fact hired by, and provide services to, Internet users.  This does not constitute patent infringement.  The Federal Circuit has squarely held that "mere 'arms-length cooperation'" by multiple parties "will not give rise to direct infringement by *any* party." *Muniacution*, 532 F.3d at 1329 (emphasis added).

Nor is Google alleged to direct, control, or "mastermind" the acts of Internet users or service providers.[5]  Google provides information to Internet users through its search engine and associated advertising program; it does not direct how Internet users act on or utilize that

---

[5]  Mr. Desenberg's complaint alleges that Google controls the United States government as well as private-sector mail carriers.  *See* Cplt. Ex. E (asserting that Google recently stole an Apple computer from Mr. Desenberg by intercepting a shipment through UPS; "UPS reported that the computer was held 'beyond the control of UPS' by a 'govt agency'. . . . Plaintiff suspects this activity is a direct result of fraud caused by the Plaintiff's Patent 732 and the Defendant's far reach into civilian affairs.").  To the extent that these or other conclusory statements could be construed as allegations that Google controls the independent actions of governments, companies, or individuals, those allegations are insufficient to sustain the complaint.  *SeeBell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007) (holding that Rule 12(b)(6) requires dismissal of complaints without "enough facts to state a claim to relief that is

information.  Courts have repeatedly held that a mere exchange of information does not constitute direction and control.  *See, e.g., Cross Medical Prod., Inc., v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311 (Fed. Cir. 2005) (method patent not infringed where some steps performed by defendant, who then gave information to surgeons, who later performed remaining steps; surgeons were not agents of the defendant, as they retained and acted on their independent medical judgment); *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F.Supp.2d 1331, 1335 (S.D. Fla. 2008) (dismissing claim for infringement of method patent where Internet users visiting site performed steps in process; "Plaintiff has, in no way, alleged that remote users are contractually bound to visit the website, it has not alleged that the remote users are Defendant's agents who visit the website within the scope of their agency relationship nor has it alleged any facts which would render Defendant otherwise vicariously liable for the acts of the remote user.").

Because the complaint does not allege that Google performs all steps of the claimed method individually, or that it directs and controls the acts of others performing those steps, the complaint does not state a claim for direct infringement.[6]

---

plausible on its face," as complaints must "nudge[] [] claims across the line from conceivable to plausible").

[6]  *See Muniaucution*, 532 F.3d at 1329-30 (finding auctioneer did not infringe method patent where bidder was required to perform several steps before auctioneer's system began participation); *BMC Resources*, 498 F.3d at 1381-82 (method patent not infringed where payment service did not control and direct financial institutions or debit card networks performing some steps of the method); *Global Patent Holdings, LLC*, 586 F.Supp.2d at 1335 (dismissing complaint where no single entity was alleged to perform all steps of the method, or direct and control others performing missing steps); *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F.Supp.2d 811, 839-40 (S.D. Tex. 2008) (no infringement where defendant performed some steps of method patent and then gave information to surgeons performing remaining steps; "[m]aking information available to the third party, prompting the third party, instructing the third party, or facilitating or arranging for the third-party's involvement in the alleged infringement is not sufficient" to establish "direction or control"); *Keithley v. Homestore.com, Inc.*, 2008 WL

11

        2.        Indirect Infringement

It is blackletter law that indirect infringement cannot exist unless at least one party directly infringes. Theories of indirect infringement, including contributory infringement and inducement, "require[], as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement." *BMC Resources*, 498 F.3d at 1379; *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341-2 (1961) ("[T]here can be no contributory infringement in the absence of a direct infringement."); *Acco Brands, Inc. v. ABA Locks Mfg. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) ("[i]n order to prevail on an inducement claim, the patentee must establish first that there has been direct infringement") (quote omitted).

As explained above, Mr. Desenberg's allegations fail to establish any act of direct infringement. Mr. Desenberg's complaint therefore fails to state a claim for indirect infringement, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See Global Patent Holdings, LLC*, 586 F.Supp.2d at 1335 (dismissing complaint where no single entity was alleged to perform all steps of the method, or direct and control others performing missing steps, as neither direct nor indirect infringement could exist).

### C.    The Complaint Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(7) Because Mr. Desenberg Failed To Join Indispensable Parties

As noted above, almost one year before filing this suit Mr. Desenberg assigned away all his rights in the patent (including any past or future rights to enforce the patent) to RMD IP LLC. Accordingly, Mr. Desenberg's complaint should be dismissed for lack of standing. However, should this Court conclude that Mr. Desenberg has standing to pursue this claim, RMD IP LLC – the current owner of the '732 Patent and the party with exclusive rights to enforcement of that

---

4962885, at *6-*7 (N.D. Cal. Nov. 19, 2008) (no infringement of method claim where defendant did not perform every step of method or control others performing the missing steps).

patent – is an indispensable party to this action.  *See, e.g., Zenith Elec. Corp. v. Exzec Inc.*, 876 F. Supp. 175, 179 (N.D. Ill. 1995) (exclusive licensee of patent must be joined as party; "In accordance with Fed. R. Civ. P. 19(a), in the absence of [the licensee], complete relief cannot be accorded among those already parties to this action. . . . [T]o avoid the uncertainty of subjecting defendants to a substantial risk of multiple litigation [the licensee] must be joined"); 7 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1614 ("in a patent-infringement suit both the patentee and his partial assignee are, in effect, co-owners, and each has been held indispensable to the action") (collecting cases).  Accordingly, Mr. Desenberg's suit should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7).

## IV.   CONCLUSION

For the reasons stated herein, Google respectfully requests that this Court dismiss Mr. Desenberg's complaint.

DATED:   New York, New York
         March 20, 2009

          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By: s/ Edward J. DeFranco
   Edward J. DeFranco
   (eddefranco@quinnemanuel.com)

51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849-7000

Charles K. Verhoeven
(charlesverhoeven@quinnemanuel.com)

50 California Street, 22nd Floor
San Francisco, California  94111
(415) 875-6600

*Attorneys for Google, Inc.*

14