UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ROGER MARX DESENBERG, | : |
| Plaintiff, | : |
| -against- | : |
| GOOGLE, INC., | : |
| Defendant. | : |

09 Civ. 10121 (GBD) (AJP)

**REPORT AND RECOMMENDATION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable George B. Daniels, United States District Judge:**

Pro se plaintiff and inventor Roger Marx Desenberg brought this action alleging that Google's "AdWords" system directly and indirectly infringes Desenberg's patent, U.S. Patent No. 7,139,732. (Dkt. No. 1: Compl. ¶¶ 11-12, 19, 21, 26-31.)

Presently before the Court is Google's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 13: Google Notice of Motion), on the grounds that the complaint "fails to state a claim for patent infringement" (Dkt. No. 14: Google Br. at 7-12).[1]

---

[1] Google also moved to dismiss for Desenberg's lack of standing and failure to join an indispensable party (Google Br. at 6, 12-13) – arising from Desenberg's December 20, 2007, assignment of all rights in his patent to his wholly-owned company RMD IP LLC, a non-party. (See Dkt. No. 15: DeFranco Aff. Ex. B: 12/20/07 Patent Assignment.)  On November
(continued...)

For the reasons set forth below, Google's motion to dismiss for failure to state a claim (Dkt. No. 13) should be <u>GRANTED</u> and Desenberg's complaint should be dismissed.

## FACTS

The facts alleged in Desenberg's complaint are assumed to be true for purposes of this motion, and will be set forth herein without use of the preamble "Desenberg alleges."

**Desenberg and His Patent**

Desenberg is an "[i]nventor, an economist, and software engineer" with "experience in architecting mission critical software systems using rapid application development techniques for many clients and many projects." (Dkt. No. 1: Compl. ¶ 4.) In 1999, Desenberg completed the "first implementation of the invention," which "included several entities to create a balanced and regulated lead generation marketplace wherein excessive fraud would be prevented," and began a lengthy and protracted patent prosecution process. (Compl. ¶¶ 4-19.)

On November 21, 2006, the United States Patent and Trademark Office issued to Desenberg U.S. Patent No. 7,139,732 ("the '732 patent" or "the patent"), entitled "Systems, Methods, and Computer Program Products Facilitating Real-Time Transactions Through The Purchase of Lead Options." (Compl. ¶ 19 & Ex. Q: Patent No. 7,139,732 Text; <u>accord</u> Dkt. No. 15: DeFranco Aff. Ex. A: Patent No. 7,139,732.)

---

[1] (...continued)
20, 2008, however, one day prior to the commencement of the instant litigation, RMD IP LLC re-assigned the patent, nunc pro tunc, back to Desenberg. (<u>See</u> Dkt. No. 38: Desenberg Aff. Ex. F: 3/21/09 Patent Assignment Notice of Recordation.) Desenberg, therefore, has standing to bring the instant litigation, and is not required to join RMD. Indeed, Google's reply brief withdrew this aspect of its motion. (Dkt. No. 39: Google Reply Br. at 2.)

The Patent's background and summary of the invention describe the invention as an internet-based system, method, or program that "facilitate[s] real-time service transaction between two or more users, including at least one client and at least one service provider," as follows:

> Service providers complete project profiles identifying projects they wish to work on, and clients complete project profiles identifying projects they would like to pay service providers to complete. . . . Both the clients and service providers may then purchase lead options to identify their desire for obtaining a matching user. The lead options can be a sum of money a user wished to pay for a lead. The present invention then determines matching clients and service providers based upon the project profiles, and identifies to one or more lead option submitting users the immediately available users that match the project profile submitted by the user.

(DeFranco Aff. Ex. A: '732 Patent "Summary of the Invention," col. 2, l. 48-62.)  Various "embodiment[s]" or "aspect[s]" of the invention describe different methods or systems of interaction between users – clients and/or service providers – and the lead option engine.  (Id. at col. 2-4.)  In addition, the patent's drawing sheets depict block diagrams which appear to document the invention as requiring the participation of three types of parties: the "lead option engine," a "client," and a "service provider."  (DeFranco Aff. Ex. A: '732 Patent Fig. 1.)

The Patent's sole independent claim, the first of eighteen claims, claims "[a] method for a user using a communication network to search for and identify at least one matching provider of project work."  (DeFranco Aff. Ex. A: '732 Patent at col. 16.)  The method comprises a series of steps including, among other things:

> transmission of a lead comprising contact information that enables communication between the user and the provider; . . . . comparing the respective maximum lead prices to determine a lowest respective maximum lead price; identifying the provider associated with the lowest one of the respective maximum lead prices; . . . . receiving from a user or provider a request for contact information, . . . . enabling communication between the user and at least one of the first provider and second

4

>provider; . . . . [and] providing . . . at least one lead to the user or provider for project work."

(DeFranco Aff. Ex. A: '732 Patent col. 16-17.)  The seventeen dependent claims describe various implementations for the first claim's method.  (DeFranco Aff. Ex. A: '732 Patent at col. 17-18.)

**Google's Alleged Infringement of Desenberg's Patent**

According to Desenberg, in 2000 "Google began using [Desenberg]'s invention," generating "more than ninety percent (90%) of all of Google's revenue . . . . [or] approximately $25 billion of revenue." (Dkt. No. 1: Compl. ¶¶ 11, 25.)  In 2003, Desenberg "became aware that Google was using his invention" upon "inspecting [Google's] AdWords system" when "consider[ing] registering for Google's AdWords to help sell his house." (Compl. ¶ 12.)  On November 21, 2006, Desenberg sent Google a cease and desist letter and proposed a "fair and reasonable fee system" of a 10% royalty and "preliminary injunction plan" for Google to compensate Desenberg for use of his patent without interrupting Google's operations or inconveniencing its customers. (Compl. ¶¶ 21-23 & Ex. E: 11/21/06 Letter.)

On or about November 21, 2008, Desenberg commenced this litigation, alleging that Google directly and contributorily infringed and induced infringement of Desenberg's patent when it "used, sold or offered to sell, . . . an Internet system and/or service that infringes each of the elements of one or more claims of Patent 732, without license from the Inventor." (Compl. ¶¶ 26-28 & Ex M: Claim Deconstruction Docs.)  Specifically, Desenberg claims that "Google's AdWords and AdSense systems infringe[] on each one of the fifteen phrases contained in Claim 1 of Patent 732 under the scenario where a vendor pays for AdWords and obtains a lead, and a service transaction

is consummated between the vendor and a customer as a result of the AdWords lead." (Compl. Ex A: Preliminary Injunction Plan at p. 3.)

Desenberg seeks damages, declarations that Desenberg's patent "was duly and legally issued" and that Google directly or contributorily infringed upon his patent, and an injunction barring Google from further infringing on his patent. (Compl. ¶ 32.)

## ANALYSIS

### I.  THE STANDARDS GOVERNING A MOTION TO DISMISS

#### A.  The Twombly-Iqbal "Plausibility" Standard

In two decisions in the last few years, the Supreme Court significantly clarified the standard for a motion to dismiss as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
>
> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. <u>Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice</u>. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. <u>Second, only a complaint that states a plausible claim for relief survives a motion to dismiss</u>. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added) (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007) (retiring the <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")).[2]

---

[2]     <u>Accord</u>, e.g., <u>Harris</u> v. <u>Mills</u>, -- F.3d --, 2009 WL 1956176 at *4 (2d Cir. July 9, 2009); <u>Lindner</u> v. <u>Int'l Bus. Machs. Corp.</u>, 06 Civ. 4751, 2008 WL 2461934 at *3 (S.D.N.Y. June 18, 2008); <u>Joseph</u> v. <u>Terrence Cardinal Cooke Health Care Ctr.</u>, 07 Civ. 9325, 2008 WL 892508 at *1 (S.D.N.Y. Apr. 2, 2008); <u>Elektra Entm't Group, Inc.</u> v. <u>Barker</u>, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008); <u>Edison Fund</u> v. <u>Cogent Inv. Strategies Fund, Ltd.</u>, 551 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2008); <u>Diana Allen Life Ins. Trust</u> v. <u>BP P.L.C.</u>, 06 Civ. 14209, 2008 WL 878190 at *3 (S.D.N.Y. Mar. 31, 2008).

B.    **Consideration Of Documents Attached To Or Referred To In The Complaint**

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading. Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." Vassilatos v. Ceram Tech Int'l, Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir. 1991)).[3/] The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference. E.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561 (1992)); Rothman v.

---

[3/]    Accord, e.g., Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006); Aniero Concrete Co. v. N.Y. City Constr. Auth., 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b); Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000); Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).

8

Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . . ."); see also, e.g., Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met. For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d at 134 (citations omitted).

In this case, documents that plaintiff Desenberg attached to or referred to in his complaint, and the documents submitted by defendant Google in support of its motion to dismiss and by Desenberg in opposition to Google's motion to dismiss (see Dkt. No. 15: DeFranco Aff. Exs. A-C; Dkt. No. 26: Desenberg Opp. Aff.), may be considered on the motion to dismiss, subject to the Faulkner v. Beer proviso.

\* \* \* \*

The Court's role in deciding a motion to dismiss "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Saunders v. Coughlin, 92 Civ. 4289, 1994 WL 88108 at \*2 (S.D.N.Y. Mar. 15, 1994) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)); accord, e.g., Watson v. McGinnis, 964 F. Supp. 127, 130-31 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.). "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence

9

to support the claims.'" Saunders v. Coughlin, 1994 WL 88108 at *2 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)).

Even after Twombly and Iqbal, when reviewing a pro se complaint, the Court must use less stringent standards than if the complaint had been drafted by counsel and must construe a pro se complaint liberally. See, e.g., Harris v. Mills, -- F.3d --, 2009 WL 1956176 at *4 (2d Cir. July 9, 2009); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991); Watson v. McGinnis, 964 F. Supp. at 131; Saunders v. Coughlin, 1994 WL 88108 at *2 (citing Hughes v. Rowe, 449 U.S. 5, 101 S. Ct. 173 (1980)). However, "[d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief. . . . " 2 Moore's Federal Practice § 12.34[4][a], at 12-72.7 (2005). Thus, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'" Id., § 12.34[1][b], at 12-61; see also, e.g., Joyner v. Greiner, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (action dismissed because pro se plaintiff "failed to allege the facts tending to establish" that defendants violated his constitutional rights).

II.   **GOOGLE'S MOTION TO DISMISS DESENBERG'S COMPLAINT SHOULD BE GRANTED**

Google argues that Desenberg fails to state a claim for direct patent infringement because, in contrast to binding Federal Circuit precedent, Desenberg's complaint "fails to allege that a single party performs 'each step of the patented process,'" and "[a]t best, it alleges that Google combines with its users and with AdWords advertisers . . . in an arms-length transaction that allegedly completes all steps of the method." (Dkt. No. 14: Google Br. at 10; see also id. at 7-11; Dkt. No. 39: Google Reply Br. at 2-7.)

10

"When deciding issues in a patent case, a district court applies the law of the circuit in which it sits to nonpatent issues and the law of the Federal Circuit to issues of substantive patent law." In re Omeprazole Patent Litig., 490 F. Supp. 2d 381, 399 (S.D.N.Y. 2007) (citing Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1378-79 (Fed. Cir. 2005)); accord, e.g., Revlon Consumer Prods. Corp. v. Estee Lauder Cos., 00 Civ. 5960, 2003 WL 21751833 at *7 (S.D.N.Y. July 30, 2003) (Peck, M.J.).

In BMC Resources, Inc. v. Paymentech, L.P., the Federal Circuit clarified "the proper standard for joint [patent] infringement by multiple parties of a single [method or process] claim" when it held that "[d]irect infringement requires a party to perform or use each and every step or element of a claimed method or product." BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373, 1378-79 (Fed. Cir. 2007); accord, e.g., Pfizer, Inc. v. Gelfand, 08 Civ. 2018, 2008 WL 2736019 at *1 (S.D.N.Y. July 9, 2008) (A method patent claim "is infringed only where the alleged infringer performs or uses 'each and every step or element of a claimed method or product.'") (quoting BMC).[4]

---

[4] BMC Resources rejected dicta in On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d 1331 (Fed. Cir. 2005), cert. denied, 549 U.S. 1054, 127 S. Ct. 683 (2006), suggesting that infringement may occur when "a party . . . performs some steps of a [method or process patent] claim in cases where a patent claims a new and useful invention that cannot be performed by one person." BMC Res., Inc. v. Paymentech, L.P., 498 F.3d at 1379. In On Demand, the Federal Circuit had "discern[ed] no flaw" in the following jury instruction:

"It is not necessary for the acts that constitute infringement to be performed by one person or entity. When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement. Infringement of a patented process or method cannot be avoided by having another perform one step of the process or method. Where the infringement is the result of the participation and combined action(s) of one or more
(continued...)

11

"This holding derives from the statute itself, which states 'whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.' 35 U.S.C. § 271(a) (2000). Thus, liability for infringement requires a party to make, use, sell, or offer to sell the patented invention, meaning the entire patented invention." BMC Res., Inc. v. Paymentech, L.P., 498 F.3d at 1380 (emphasis added); see also NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("A method or process consists of one or more operative steps, and, accordingly, '[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized.'") (quoting Roberts Dairy Co. v. United States, 208 Ct. Cl. 830, 530 F.2d 1342, 1354 (Ct. Cl. 1976)).

The Federal Circuit, therefore, affirmed defendant Paymentech's non-infringement of the asserted patent, which disclosed a multi-step "method for processing debit transactions without a personal identification number (PIN)" between merchants and customers using a touch-tone phone, because defendant did "not perform every step of the method at issue in this case." BMC Res., Inc. v. Paymentech, L.P., 498 F.3d at 1375, 1378.

---

4/ (...continued)
persons or entities, they are joint infringers and are jointly liable for the infringement."

On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d at 1344-45. BMC Resources held, however, that On Demand made no "analysis of the issues presented relating to divided infringement," and therefore "did not change the traditional standard requiring a single party to perform all steps of a claimed method," and "did not change [the Federal Circuit's] precedent with regard to joint infringement." BMC Res., Inc. v. Paymentech, L.P., 498 F.3d at 1380.

Desenberg's patent, as structured in the elements or steps comprising the patent's first claim (the only independent claim), clearly require the participation of multiple parties. Indeed, the method facilitates interactions between consumers and service providers in real-time (see pages 3-4 above), making multiple parties critical to the method's design and implementation. Desenberg perhaps could have drafted his patent claim so that one entity controlled all of the steps, but as written, the claim requires a series of interactions, transmissions and communications between "users" and "providers," similar to the multi-step patent process involving merchants and customers in BMC Resources. (See pages 3-4 above.) The Federal Circuit acknowledged "the difficulty of proving infringement of this claim format," but refused to "unilaterally restructure the claim or the standards for joint infringement to remedy . . . ill-conceived claims." BMC Res., Inc. v. Paymentech, L.P., 498 F.3d at 1381. Desenberg's argument that the patent's independent claim "mentions only TWO parties, the 'user' and a 'provider'" (Dkt. No. 26: Desenberg Opp. Br. at 3, 5-6), does not remove this action from BMC Resources' holding which would require Desenberg to allege that Google performs both the "user" and "provider" steps in the claim, which Desenberg has not alleged, and by the very terms of his patent, cannot realistically allege.[5]

        The Federal Circuit noted that "[a] party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity. In those cases, the party in control would be liable for direct infringement. It would be unfair indeed for the mastermind in such

---

[5] In addition, Desenberg's opposition brief claim that "[d]efendant performs every step of the claimed method" does not accurately reflect the patent's claim, as written, nor the allegations in Desenberg's complaint. (Desenberg Opp. Br. at 7, 9-10, 13.)

13

situations to escape liability." BMC Res., Inc. v. Paymentech, L.P., 498 F.3d at 1381. In Muniauction, Inc. v. Thomson Corp., discussing BMC Resources, the Federal Circuit recognized a range of multi-party relationships that may or may not support liability for infringement by one party:

> Accordingly, where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises "control or direction" over the entire process such that every step is attributable to the controlling party, i.e., the "mastermind." At the other end of this multi-party spectrum, mere "arms-length cooperation" will not give rise to direct infringement by any party.

Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 1329 (Fed. Cir. 2008), cert. denied, 129 S. Ct. 1585 (2009). This "control or direction" standard "may in some circumstances allow parties to enter into arms-length agreements to avoid infringement. Nonetheless, this concern does not outweigh concerns over expanding the rules governing direct infringement. . . . [and] can usually be offset by proper claim drafting. . . . [by] structur[ing] a claim to capture infringement by a single party." BMC Res., Inc. v. Paymentech, L.P., 498 F.3d at 1381.

"Under BMC Resources, the control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method."[6] Muniauction, Inc. v. Thomson Corp., 532 F.3d at 1330; see BMC Res., Inc. v. Paymentech, L.P., 498 F.3d at 1379 ("[T]he law imposes vicarious liability on a party for the acts of another in circumstances showing that the liable party controlled the conduct of the acting party.") In addition,

---

[6] At least one district court has held that "[w]hile a showing of vicarious liability is sufficient to find direction or control, it is not a necessary requirement." Akamai Techs., Inc. v. Limelight Networks, Inc., 614 F. Supp. 2d 90, 120 (D. Mass. 2009).

14

Muniauction – where the patent at issue claimed an electronic method allowing municipal bond issuers to initiate and monitor bond auctions, and bidders to prepare, submit, and monitor bids – held that an alleged infringer that merely "controls access to its system and instructs bidders on its use is not sufficient to incur liability for direct infringement." Muniauction, Inc. v. Thomson Corp., 532 F.3d at 1322, 1330; see, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc, 614 F. Supp. 2d at 121 ("Muniauction establishes that direction or control requires something more than merely a contractual agreement to pay for a defendant's services and instructions or directions on how to utilize those services."); Emtel, Inc. v. Lipidlabs, Inc., 583 F. Supp. 2d 811, 831 (S.D. Tex. 2008) ("BMC Resources and Muniauction teach that . . . . [p]roviding data to another party, as in BMC Resources, does not support an inference of adequate 'direction or control.' Controlling access to a system and providing instructions on using that system – 'teaching, instructing or facilitating of the other party's participation' in the patented system – as in Muniauction, does not show adequate 'direction or control.'") (citations omitted); Global Patent Holdings, LLC v. Panthers BRHC LLC, 586 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008) ("[I]t appears that the level of 'direction or control' the Federal Circuit intended was not mere guidance or instruction in how to conduct some of the steps of the method patent. Instead, the court indicates that the third party must perform the steps of the patented process by virtue of a contractual obligation or other relationship that gives rise to vicarious liability in order for a court to find 'direction or control.'"), aff'd, 318 Fed. Appx. 908, 909 (Fed. Cir. 2009).

        Google argues that its interactions with users and AdWords advertisers constitute arms-length transactions, and that Desenberg has not alleged that Google acts as a "mastermind"

15

directing or controlling the actions or participation of users.  (Dkt. No. 14: Google Br. at 10-11.)  This Court agrees.  Desenberg has not alleged that those who participate in Google AdWords do so at the behest of Google, even under an expansive interpretation of "direction or control," and although this Court sympathizes with the limitations that Desenberg faces in proceeding pro se, he has failed to properly allege that Google exercises even a modicum of control over Google AdWords users to satisfy the Federal Circuit's joint infringement standard.[7]  Desenberg's direct infringement claim therefore should be DISMISSED.  See also, e.g., Friday Group v. Ticketmaster, No. 08 CV 01203, 2008 WL 5233078 at *3 (E.D. Mo. Dec. 12, 2008) (Granting motion to dismiss patent infringement claim where "[p]laintiff's complaint . . . does not allege that any single defendant performed all of the steps of the method or that any defendant was the 'mastermind' behind the operation.  Absent the allegation that one of these defendants was the one that directed or controlled the method, Plaintiff fails to state a claim for direct infringement.") (citation omitted).

        Desenberg's claim of contributory infringement also fails.  "Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement."  BMC Res., Inc. v. Paymentech, L.P., 498 F.3d at 1379 (citing Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1272 (Fed. Cir. 2004)); see also, e.g., Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 341, 81 S. Ct. 599, 602 (1961) ("[T]here can be no contributory infringement in the absence of a direct infringement."); ACCO

---

[7]    Desenberg makes no allegations regarding direction or control in his complaint, and makes only fleeting and conclusory statements in his opposition brief that "AdWords is [not] involved with '[M]ere "arms-length cooperation."'" (Desenberg Opp. Br. at 8, 13.)

Brands, Inc. v. ABA Locks Mfrs. Co., 501 F.3d 1307, 1312 (Fed. Cir. 2007) ("In order to prevail on an inducement claim, the patentee must establish 'first that there has been direct infringement . . . .'"). Because Desenberg's complaint does not allege that Google or any other entity has committed the entire act of direct infringement, Google's motion to dismiss Desenberg's direct infringement claims also should be GRANTED.

## CONCLUSION

For the reasons stated above, Google's motion to dismiss (Dkt. No. 13) should be GRANTED and Desenberg's complaint should be DISMISSED.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 630, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Daniels (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs.,

892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

Dated:   New York, New York
         July 30, 2009

                                                     Respectfully submitted,

                                                     Andrew J. Peck
                                                     United States Magistrate Judge

Copies to:   Roger Marx Desenberg (Regular & Certified Mail)
             Edward J. DeFranco, Esq.
             Judge George B. Daniels

H:\OPIN\DESENBERG